IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-5-D

| | |
|---|---|
| DENNIS L. RICHARDSON,  ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Dennis L. Richardson ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 17, 18). Both parties submitted a memorandum in support of their respective motions (D.E. 17-1, 19). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 20). For the reasons set forth below, it will be recommended that plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 1 September 2004, alleging a disability onset date of 7 February 2000. Transcript of Proceedings ("Tr.") 23. He subsequently amended his alleged

onset date to 11 August 2004.¹ *Id.* 23, 84. He was last insured for disability benefits on 30 September 2006, according to the Administrative Law Judge ("ALJ"), or 31 December 2005, according to the Commissioner, who cited documents of record listing the latter date (*id.* 58 ("DIS DLI: 12/05"), 60 ("Date last insured . . . 12/05"). Thus, the alleged period of disability at issue runs from 11 August 2004 until at least 31 December 2005. To the extent it could appropriately do so on the record presently before it, the court need not resolve the issue of the last insured date given the disposition of this appeal.

His application was denied initially, *id.* 23, and again upon reconsideration, *see id.*, and a request for hearing was timely filed, *id.* 23, 41-42. On 13 July 2007, a hearing was held before an ALJ. *Id.* 408-40. The ALJ issued a decision denying plaintiff's claim on 24 August 2007. *Id.* 23-31. Plaintiff timely requested review by the Appeals Council. *Id.* 12-13. The Appeals Council denied the request for review on 20 November 2009. *Id.* 5-7. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 13 January 2010, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 4)).

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d

---

¹ Apparently because plaintiff alleged an onset date in 2000, the record is replete with evidence substantially predating the alleged amended onset date in 2004.

1200, 1203 (4th Cir. 1995). The Act goes on to describe the attributes an impairment must have to be disabling:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work.

3

> If you can make an adjustment to other work, we will find that you are not disabled.
> If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4) (as effective until 11 Nov. 2010).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C.    Findings of the ALJ

Plaintiff was 43 years old on the alleged onset date of disability and 45 years old on the date of the administrative hearing. *See* Tr. 30 ¶ 7.[2] He has a high school equivalent education and past work experience as a correctional officer. *Id.* 29 ¶ 6, 30 ¶ 8.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity from 11 August 2004 through his last date insured. *Id.* 24 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): degenerative disc disease, coronary artery disease, obesity, obstructive sleep

---

[2] For ease of reference, the court has included in citations to the ALJ's decision the numbered paragraph in which the cited material is located if more than one numbered paragraph appears on the page referenced.

4

apnea, and depression/anxiety. Tr. 24 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. *Id.* 25 ¶ 4.

The ALJ determined that plaintiff had the RFC to perform work at the light exertional level subject to the following limitations: simple, routine, repetitive tasks in a nonproduction work environment; no frequent postural limitations such as bending, stooping, squatting, crouching, or climbing; no excessive pulmonary irritants including dust, fumes, and gases; and no work around hazards. *Id.* 27 ¶ 5; 30 ¶ 10. Based on this RFC, the ALJ found at step four that plaintiff could not have performed his past relevant work as a correctional officer. *Id.* 29 ¶ 6.

At step five, the ALJ found that these were jobs in significant numbers in the national economy that plaintiff could have performed, including mail clerk, cashier II, and photocopy machine operator. *Id.* 30 ¶ 10. In making this determination, the ALJ adopted the opinion of a vocational expert who testified at the hearing. *Id.* The ALJ accordingly found plaintiff not disabled during the relevant period. *Id.* 31 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v.*

*Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

**B.     Overview of Plaintiff's Contentions**

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred by failing: (1) to give adequate weight to the opinions of plaintiff's treating and consultative examining

healthcare providers; (2) to consider the combined effect of all of plaintiff's impairments, including his obesity, on his work capacity; and (3) to identify and obtain a reasonable explanation for a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*. Not addressed by the parties is another issue, to which the court now turns.

C.     **ALJ's Nonapplication of Special Technique for Mental Impairments**

When, as here, the ALJ determines that a claimant has a medically determinable mental impairment, the Regulations require the ALJ to follow a special technique to evaluate such impairments, as described in 20 C.F.R. § 404.1520a(b)-(e). 20 C.F.R. § 404.1520a(a). Under the special technique, an ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

The ALJ was also required to document in his decision his application of the special technique. *Id.* § 404.1520a(e). Specifically, an ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique" and "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* § 404.1520a(e)(2). The decision must also include a specific finding as to the degree of limitation in each of the four functional areas. *Id.*

7

Here, the ALJ does not provide the ratings required by the special technique. Nor does he cite to the underlying regulation or otherwise reference his obligation to apply the special technique. In the absence of documentation that the ALJ applied the special technique as required, the court concludes that he failed to do so.

To be sure, portions of the ALJ's decision indicate that he gave some consideration to plaintiff's limitations in functional areas addressed by the special technique. But these portions of the decision are no substitute for the ratings required by the Regulations. Plaintiff did not receive the benefit of the full evaluation of his mental impairments that the special technique requires.

For example, in considering the mental impairment listings at step three of his analysis, the ALJ states that plaintiff's mental impairments do not cause marked limitations in at least two functional areas, or a marked limitation in one functional area and repeated episodes of decompensation. Tr. 25 ¶ 4. But this determination shows only that the ALJ analyzed plaintiff's limitations in certain functional areas sufficiently to rule out the two scenarios specified. It does not show that the ALJ actually determined a level of limitation in each functional area or, if he did, what the level of limitation was. The ALJ does not even identify the areas in which he deemed plaintiff's limitations not to be marked.

Similarly, the ALJ speaks favorably of the RFC in the nonexamining consultative evaluations. *See id.* 541. But he does not expressly adopt these ratings.

Where the claimant has presented a colorable claim of mental impairment, as here, the failure to incorporate the special technique into the ALJ's decision warrants remand for further proceedings. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); *Witt v. Barnhart*, 446 F. Supp. 2d 886,

898 (N.D. Ill. 2006). Therefore, the ALJ's failure to apply the special technique requires remand of this case.

D.    **Weight Accorded Opinion Evidence from Healthcare Providers**

Independent of the ALJ's failure to apply the special technique, the court finds that, as plaintiff contends in part, deficiencies in his explanation of the weight accorded opinion evidence from healthcare providers requires remand. The court begins its analysis with a review of applicable legal principles.

Opinions of psychologists and physicians who have treated a claimant are generally accorded more weight than the opinions of such providers lacking a treatment relationship. 20 C.F.R. §404.1527(d)(2) (as effective through 11 Nov. 2010). The reasons is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Indeed, the Regulations provide that opinions of treating psychologists and physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency

9

with the record, and any specialization of the provider. 20 C.F.R. § 404.1527(d)(2)-(6). Significantly, an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii).

Similarly, the opinions of psychologists and physicians who examine a claimant are generally entitled to more weight than those of such providers who did not perform an examination. *See* 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. 20 C.F.R. § 404.1527(f). Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. 20 C.F.R. § 404.1527(f)(2)(ii).

The same factors used to determine the weight to be accorded the opinions of psychologists and physicians (and other so-called "acceptable medical sources") apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), such as psychological counselors. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *4 (9 Aug. 2006); *see also* 20 C.F.R. § 404.1527(d). As with opinions from psychologists and physicians, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise

ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6.

Notably, in this case the ALJ largely rejected the opinions of the sources who either treated or examined plaintiff specifically for mental impairments during the alleged disability period. The law does permit the rejection of the opinions of such sources under certain circumstances, notwithstanding the fact that they are generally given more weight than the opinions of nontreating and nonexamining sources. The ALJ here, however, failed adequately to explain such rejection. The court will not attempt to catalog each deficiency in the ALJ's explanation, but will highlight several of the most prominent.

The principal mental health treating source was psychologist Gary Buchara, Ph.D. He treated plaintiff for approximately five years, from February 2000 until May 2005. Tr. 27; *see also id.* 406.[3] On several occasions, Dr. Buchara found plaintiff to be unable to work. *Id., e.g.*, 228, 395, 396, 441.

In a portion of his analysis of Dr. Buchara's opinions, the ALJ states that "[w]hile Dr. Buchara completed a medical source statement form [in March 2002] noting the claimant was not limited in understanding and memory, in sustained concentration and persistence, in social interaction and in adaptation, he reported the claimant's chronic pain and depression did not pertain to those limitations." Tr. 27 (referring to *id.* 236).[4] The ALJ then says: "That statement is not given great weight as the claimant's mental status is directly related to those limitations." *Id.* "That

---

[3] Although the ALJ states that Dr. Buchara's reports pertain to the time period prior to plaintiff's amended onset of disability date, 11 August 2004, one report (Tr. 441) is stamped as received by DDS on 1 January 2005.

[4] Dr. Buchara stated in handwriting: "Pt has chronic pain & maj depression[.] The limitations on this form do not pertain to his condition[.]" Tr. 236.

11

statement" appears to refer to Dr. Buchara's finding that plaintiff's chronic pain and depression do not pertain to the functional areas evaluated. If the court's interpretation is correct, the ALJ seems to be making his own medical judgment that plaintiff's pain and depression do relate to the various functional areas evaluated. The ALJ cites no supporting evidence for his determination. Instead, he seems impermissibly to be substituting his own medical judgment for that of plaintiff's treating psychologist. *See, e.g., David v. Astrue*, Civil Action No. 09-cv-00744-CMA, 2010 WL 3894003, at *11 (D. Colo. 30 Sept. 2010) ("[A]n ALJ may not substitute his medical judgment for that of a medical source . . . .").

In May 2005, plaintiff began seeing a psychological counselor, Dwight Dunning, M.A. LPC, on Dr. Buchara's referral and continued seeing him through at least May 2007. Tr. 27. Dunning has opined that plaintiff's mental status made it unlikely that he could meet vocational requirements. *See id.* 406, 407.

Although it is clear that the ALJ did not give this opinion substantial weight, he does not expressly state the weight he gave it or any underlying reasons. This omission is significant given Dunning's status as only one of two mental health providers who treated plaintiff.

The sole consultative mental examination of plaintiff during the alleged disability period was performed by psychologist Jerome Albert, Ph.D. on 15 January 2005. *See id.* 509-11. Dr. Albert found that, as stated by the ALJ, "the claimant would have difficulty sustaining attention to perform routine, repetitive tasks, might have difficulty getting along with fellow workers and supervisors, and would have difficulty tolerating the stress and pressures associated with day to day work activity." *Id.* 28 (referring to *id.* 511). The ALJ stated that he did not give Dr. Albert's evaluation "great weight." *Id.*

12

The ALJ does not adequately explain this determination. One reason he gives is that the restrictions found by Dr. Albert are not supported by "the total evidence of record." *Id.* The specific evidence to which the ALJ refers is not clear.

The next reason stated by the ALJ is that plaintiff has not had "sustained psychiatric treatment nor has he been hospitalized for any psychiatric-related illness." *Id.*; *see also id.* 29 ¶ 5 ("As previously established, the claimant has not been hospitalized due to his mental status and he is not under the care of a psychiatrist."). The significance of the absence of sustained *psychiatric* treatment is unclear when plaintiff had been under sustained *psychological* treatment continuously from 2000 to at least 2007.[5] The determination that plaintiff has not been hospitalized for psychiatric problems also adds little support to the ALJ's rejection of Dr. Albert's opinion. A mental impairment can obviously be disabling without requiring hospitalization. Moreover, plaintiff appears to make no allegation that his condition reached the level of requiring hospitalization.

The ALJ further notes that plaintiff "is not under psychiatric care by a psychiatrist but only sees a counsellor." *Id.* 28. It is questionable whether, as this finding assumes, treatment by a counselor, particularly after treatment by a psychologist for over five years, necessarily indicates that the condition at issue is less severe than one treated by a psychiatrist. The ALJ cites no authority for this proposition.[6]

---

[5] Elsewhere in his decision, the ALJ states in a similar vein that "[i]f the claimant were experiencing severe mental problems, it is also reasonable to assume he would be referred for treatment to a psychiatrist." Tr. 29. This statement is contradicted to some degree by the ALJ's own finding that plaintiff's depression/anxiety was a severe impairment within the meaning of the Regulations. *See id.* 24 ¶ 3.

[6] A facially more meritorious reason cited by the ALJ for not giving Dr. Albert's opinion great weight is that his evaluation was on a one-time basis and not longitudinal in nature. *See* 20 C.F.R. § 404.1527(d)(2).

13

Instead of relying on the mental health treating and examining sources, the ALJ appears to place substantial weight on cryptic references regarding plaintiff's mental health made in the treatment notes of plaintiff's primary medical care provider from April 2005 until May 2006, Southeastern Medical Oncology Center (*see id.* 26-27). *See id.* 28 (referring to *id.*, e.g., 362, 363, 364, 365, 369, 372, 376, 379). The medical focus of this provider undermines the value of this evidence as proof of plaintiff's mental status. *See* 20 C.F.R. § 404.1527(d)(5). Further, in his analysis of these records, the ALJ emphasizes the absence of an indication in them of a change in plaintiff's mental status. *See* Tr. 28. While the absence of change signifies that plaintiff's underlying functional limitations did not worsen, it also indicates that they persisted and did not lessen.

With respect to opinion evidence bearing on plaintiff's medical condition, the ALJ finds plaintiff's limitations less extensive than those espoused by Barry Katz, M.D., a neurological surgeon. *See id.* He does so, in part, based on his finding that Dr. Katz performed a one-time, "snap shot" evaluation of plaintiff, rather than one longitudinal in nature. *See id.* 28, 29 ¶ 5. He equates Dr. Katz's evaluation in this regard to that of the examining psychological consultant Dr. Albert. *Id.* 29 ¶ 5. But as another portion of the ALJ's decision indicates, Dr. Katz's evaluation was not one time. He performed surgery on plaintiff's back in November 2000 and continued treating plaintiff through February 2004. *Id.* 26. The decision thus reveals apparent confusion on the ALJ's part regarding the nature of Dr. Katz's dealings with plaintiff and the weight to be given Dr. Katz's opinions.

The ALJ does not mention at all another medical source, consultative medical examiner Karlus Artis, M.D. *See id.* 197-201. The court recognizes that an ALJ is not required to discuss

14

every piece of evidence and that Dr. Artis's examination of plaintiff occurred in February 2002, well before the alleged onset of disability. However, in the context of the recommended remand, the clarity of the ALJ's analysis would be served by the ALJ's stating expressly his analysis of the Dr. Artis's findings and opinions.

The ALJ also indicates his reliance on the conclusion set forth in "the DDS assessment" that plaintiff has a less restrictive RFC than Dr. Albert's. *Id.* 29 ¶ 5. The ALJ is apparently referring to a consultative nonexamining assessment of plaintiff (*id.* 527-44) performed by a Disability Determination Services[7] psychologist on 14 February 2005. *See id.* 29 ¶ 5. The court makes this inference because the ALJ states that the assessment is based on a review of the total evidence of record and a nonexamining assessment of this sort is generally based on the record developed up to the time of the assessment. The sole ground the ALJ suggests for favoring the assessment of this nonexamining source is that it is based on a review of the total evidence of record.[8] *Id.*

The court stresses that on remand the Commissioner needs to use care in analyzing and setting out his analysis of the weight he gives to the opinions of the various mental and medical healthcare providers. As the foregoing authorities require, the explanation should be sufficiently specific "to make clear" to plaintiff and any subsequent reviewers the weight given each opinion and the reasons for such weight. Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii).

---

[7] The Disability Determination Services is a state agency whose examiners and consultants review and make decisions on applications for disability under the Social Security program. *See* entry for "DDS" under "Program" tab on NC DHHS Open Window website, http://dhhsopenwindow.nc.gov/index.aspx.

[8] It appears that "the DDS assessment" as used by the ALJ also includes a consultative nonexamining physical assessment performed on 2 March 2005 (Tr. 550-57). The court draws this inference because the ALJ compares "the DDS assessment" to not only the evaluation of Dr. Albert, but also the evaluation by Dr. Katz. If the court's interpretation is accurate, the 2 March 2005 nonexamining physical assessment would be included in the ALJ's statement that he was favoring it because it is based on the total evidence of record. *See id.* 29 ¶ 5.

15

E.   **Other Considerations**

As indicated at the outset, there is a difference between the Commissioner and the ALJ as to the last date plaintiff was insured. The Commissioner needs to address this issue on remand. Definitive determination of the date is not only an end in itself, but could possibly bear on other issues, such as the temporal relevance of certain evidence. That is, evidence as of a particular date could conceivably have a materially different degree of relevance to plaintiff's alleged disability depending on whether the alleged disability period extended through 30 September 2006 or ended on 31 December 2005.

The Commissioner will otherwise be required to conduct a comprehensive re-evaluation of the record in this case due to the failure to apply and document application of the special technique and to adequately explain the weight given the mental health and medical source opinion evidence will necessarily require comprehensive re-evaluation of the record by the Commissioner. The court therefore declines to address the merits of plaintiff's other challenges to the ALJ's decision.

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion for judgment on the pleadings be DENIED, plaintiff's motion for judgment on the pleadings be ALLOWED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 30 day of November 2010.

James E. Gates
United States Magistrate Judge